In re the MARRIAGE OF Michael J. DOWNING and Carol Ann Downing.

Upon the Petition of Michael J. DOWNING, Appellant, and Concerning

Carol Ann DOWNING, Appellee.

No. 55803.

Supreme Court of Iowa.

Sept. 19, 1973.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES, and UHLENHOPP, JJ.

UHLENHOPP, Justice.

This appeal involves provisions relating to alimony in a decree dissolving a marriage.

Carol Ann Weldon, a university student, and Michael J. Downing, a hospital technician, were 20 years old when they married. Before the marriage, Carol had an eye disease of which they both were aware. During the marriage, Carol's eye condition grew worse, but apparently stabilized. No one suggests the marriage had anything to do with the eye condition.

The marriage was completely unsuccessful and the couple separated after five and one-half months. No child was conceived. After the separation, Michael lived in an apartment and Carol lived with her mother, a widow. Michael paid the bills which existed at the time of separation and thereafter commenced the present proceeding to dissolve the marriage.

At time of trial, Michael's assets consisted of apartment furniture, a 1970-model van-type car encumbered in the amount of $125, and his clothing. His income was $400 gross per month. Carol's assets consisted of the parties' bank account (amount not shown), wedding presents, her clothing, and $25,000 in good quality stocks which produced dividends of about $1,000 annually (the stocks were a gift from her father). Carol's eye condition prevented her from seeing small print and also from reading regular-sized print in books for prolonged periods. She was not attending school or working. Her university dean did not encourage or discourage her to become a teacher. She testified, "I don't know of any specific job I could hold but I assume there would be something."

The trial court dissolved the marriage on March 29, 1972. The parties kept their own assets, and the court did not make a further division. The court required Michael to pay Carol alimony of $20 per week until March 1, 1973, when the alimony question would be reexamined in light of existing conditions.

■ Michael appealed as to the alimony provisions. Although the trial court provided that the alimony question would be reexamined, the whole decree was nonetheless appealable, including that provision for reexamination. Shipley v. Shipley, 182 N. W.2d 125 (Iowa).

This court laid down premarital and postmarital criteria regarding alimony in Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa). (See also In re Marriage of Williams, 199 N.W.2d 339 (Iowa) (fault not considered).) One of the premarital crite-ria is the parties' "respective mental or physical condition." Among the postmarital criteria are, "Duration of the marriage," "Present physical and mental health of each party," "Earning capacity of each party," and "Net worth . . . and present income of each party."

Michael argues that if Carol's eye condition did not exist, a court would grant little or no alimony on the dissolution of this short-lived marriage. Pinion v. Pinion, 92 Utah 255, 67 P.2d 265; Annots., 1 A.L.R. 3d 6, 32, 1 A.L.R.3d 123, 145. He says that the eye condition should not change the result, for the marriage did not bring about that condition and Carol is no worse off than if she had not married. Carol argues, on the other hand, that because of her affliction she may be unable to maintain herself fully and that if at the second hearing the trial court so finds, it should grant her further alimony.

The case presents a basic issue. If a spouse becomes incapable of self-support from a malady which antedated and was not aggravated by the marriage itself, must the other spouse help support the afflicted one after dissolution of the marriage, even if the marriage is of short duration?

We do not think a categorical answer can be given, as much depends on the circumstances. On the one hand, a marriage cannot be equated to a commercial transaction in which a buyer can avoid further liability by rescinding if the goods become unsound. Marriage involves an undertaking by two individuals to uphold, sustain, and assist each other in times of bad fortune as well as good. On the other hand, if an affliction of one spouse did not arise during the marriage but rather antedated it, and if the marriage was short-lived so that the spouses did not contribute to the relationship for a considerable period, then the equity of granting alimony is lessened. Thus the surrounding circumstances become especially important.

■ In this case we have the additional circumstances that the husband paid all of

438

the bills upon separation, no children are involved, the wife has about $25,000 in stock, the husband was not granted part of the stock, and the wife was granted periodic alimony for about a year amounting to approximately $1,000. In addition, the wife, like other handicapped persons, has a duty to endeavor to help herself by seeking employment within her capabilities or by obtaining training and then seeking employment. She is not totally disabled.

 Upon weighing the opposing arguments and also these attendant circumstances, we conclude that the wife should not be granted further alimony. The trial court's decree is right except for the part ordering a further hearing on the question of additional alimony. That part is deleted. All alimony rights terminate as of March 1, 1973.

Carol is allowed $250 of Michael to apply on attorney fees on this appeal.

Modified and affirmed.