In re the MARRIAGE OF John J. MASKEL, Jr. and Virginia E. Maskel.

Upon the Petition of John J. MASKEL, Jr. Appellee,

and concerning

Virginia E. MASKEL, Appellant.

No. 2–56524.

Supreme Court of Iowa.

Jan. 22, 1975.

Rehearing Denied Feb. 13, 1975.

McDonald, McDonald & Stonebraker, Davenport, for appellant.

Schroeder & Carstensen, Clinton, for appellee.

Heard before MOORE, C. J., and MASON, REES, UHLENHOPP and REYNOLDSON, JJ.

UHLENHOPP, Justice.

This is an appeal and cross-appeal from a decree in which the trial court partially vacated a previous marriage-dissolution decree and made a different property division.

John J. Maskel, Jr. and Virginia E. Nessler were married on December 19, 1964. Both were in civil service in the Panama Canal Zone. He was 42 and employed by the United States Army. She was 50 and employed by the Panama Canal Company. Both of them brought some property to the marriage; his was about $13,000 and hers about $17,000 in value. Part of her assets was an unimproved lot in Florida for which she paid $650 a number of years previously and another part was approximately $15,000 in cash which she obtained for a property in California. During the earlier years of the marriage, Mrs. Maskel earned more than Mr. Maskel did; in the later years the reverse was true. The parties largely pooled their assets and earnings during the marriage. Both parties had been married before; she had two sons, one grown and the other almost grown.

On September 8, 1966, the parties entered into a separation agreement in which they divided their personal property and agreed that any property either of them thereafter acquired should belong to the party acquiring it. The evidence indicates that they did not actually intend to separate when they made the agreement; they made it to get around certain federal regulations on housing. They cohabited thereafter until June 1971. During that period they acquired in their joint names and largely from their common funds an apartment house and a commercial building in Clinton, Iowa, and three unimproved lots in neighboring Lyons, Iowa. According to the testimony, the apartment house cost "around $22,-500.00 or $22,000.00" and the balance of the mortgage on it at time of trial in May 1973 was "about $550.00." Also, the commercial building cost $38,000 or $40,000 and the mortgage was "around twenty-one thousand some odd hundred dollars." Mrs. Maskel also acquired some jewelry for herself from common funds; the parties dispute its value.

In June 1971 Mr. Maskel moved to Iowa, taking a considerable amount of the parties' furniture. He testified that the parties then intended to divorce. Mrs. Maskel testified that Mr. Maskel left in connection with a job transfer and she was to join him later upon her approaching retirement, but that he later called her from Iowa requesting a divorce.

Mrs. Maskel did not commence a divorce proceeding, and subsequently Mr. Maskel started one in Clinton, Iowa, through Attorneys Schroeder & Carstensen. Mr. Maskel made the 1966 separation agreement a part of his petition. Mr. Schroeder sent to Mrs. Maskel and to the parties' family attorney in the Canal Zone an original notice, copy of petition, written appearance, and consent to hearing and decree without further notice. Mrs. Maskel signed and returned the appearance and consent, and she also took counsel with Attorneys Holleran, Holleran, Shaw & Murphy of Clinton. On December 29, 1971, Mr. Murphy filed answer denying the material allegations of the petition.

About December 30, 1971, Mrs. Maskel was in Clinton and the parties and their attorneys conferred. Mr. Maskel desired to obtain a property settlement; probably Mrs. Maskel desired to continue the marriage. The conference became protracted and the attorneys left for other appointments while the parties talked. A dispute exists as to whether the parties reached a settlement. Mr. Maskel claims they did and that Mrs. Maskel was so to notify her attorney. That Mrs. Maskel did not notify her attorney about a settlement somewhat indicates the parties did not settle. A contrary inference arises from a letter Mr. Maskel

wrote Mrs. Maskel on January 2, 1972. In it he stated among other things:

> I plan on listing the apartment on a silent listing (don't want to loose the tennants by having a public listing) If anything develops, I will let you know and if sold will send you a check for ½ the proceeds after the selling expenses. The other place we will leave ride until we see what happens on the lease.

The 90-day waiting period in dissolution cases was running. See Code 1973, § 598.-19. During that period Mr. Schroeder asked Mr. Murphy about Mrs. Maskel's intentions concerning the divorce proceeding. Mr. Murphy wrote Mrs. Maskel, but she did not respond.

Neither party filed a certificate of readiness under rule 181, Rules of Civil Procedure. About ten days prior to March 29, 1972, Mr. Schroeder appeared before the district court (Sutton, J.) and explained what had transpired to that point. The court set the case for hearing on March 29, 1972. Mr. Schroeder thereupon telephoned Mr. Murphy's office to notify him, but Mr. Murphy was not in. Mr. Schroeder made a second call without success. He then made a third call and, as Mr. Murphy was still unavailable, informed Mr. Murphy's secretary that the court had set the hearing for March 29, 1972, and that Mr. Murphy should advise Mr. Schroeder if Mr. Murphy or Mrs. Maskel intended to appear. Mr. Murphy did not get this message and did not respond. Mr. Schroeder did not confirm his telephone calls by a letter.

On March 29, 1972, Mr. Schroeder appeared before Judge Sutton, stated what he had done, and submitted his evidence. We do not have the details of that hearing as a record was not made. The court dissolved the marriage, awarded Mr. Maskel the apartment house and the office building in Clinton and also the three lots in Lyons, required him to pay the mortgages on such real estate, and granted him his car and personal effects. The court granted Mrs. Maskel her car, personal effects, jewelry, household goods, other assets in her possession, and real estate titled in her own name. This property granted to Mrs. Maskel amounted in substance to some furniture and personal jewelry, a car, her unimproved lot in Florida, and her credit union account of $5000 subject to a loan of $4150. As between the two parties, Mr. Maskel came out substantially ahead.

Neither Mrs. Maskel nor Mr. Murphy received a copy of the decree. See rule 120, R.C.P. In August 1972, the attorney in the Canal Zone called Mr. Murphy about the status of the case. Mr. Murphy inquired of Mr. Schroeder, who told him that the case had gone to decree after Mr. Schroeder had left information with Mr. Murphy's secretary as to the time of hearing and had asked her to inform Mr. Murphy.

When Mr. Murphy learned that the court had heard the case, more than 60 days had elapsed from time of decree. Therefore Mrs. Maskel did not attempt to proceed under rule 236 of the Rules of Civil Procedure. Instead, on September 6, 1972, she petitioned under rule 252 to vacate the decree. The trial court held a hearing in three sessions. At the first session, most of the testimony dealt with the grounds for vacating the decree although some dealt with Mrs. Maskel's endeavor to show she had a meritorious defense as to the property division. At the second session, the court allowed Mrs. Maskel to present the rest of her evidence regarding a property division and alimony—to save her a trip back from the Canal Zone in the event the court sustained her petition to vacate the original decree. At the third session, Mrs. Maskel concluded her evidence and Mr. Maskel presented his evidence on a property division and alimony, to cover the contingency that the court would sustain the petition to vacate. At that third session, Mr. Maskel testified regarding the Clinton and Lyons real estate. He then testified:

> Q. (By Mr. Schroeder.) As far as making a settlement of property or dividing some, if it were up to you to make an equitable distribution between yourself

and Mrs. Maskel, what, in your opinion, would constitute an equitable distribution as of now? A. Well, I don't have any money cash-wise, so I can't make it equitable that way, but if you want to put a dollar figure on it, I would say probably around $20,000.00.

Then this appears:

Q. (By Mr. Murphy.) You are saying that distribution would be right, in other words, in your opinion? A. I would say probably.

Q. Okay. The— A. I can't consent to it, but what I'm trying to say is I recognize that Mrs. Maskel has a certain amount of interest in this property and I'm not in any way trying to deprive her of that interest. That's what I'm saying.

The evidence introduced at the sessions also shows that the parties each have and will have a good income and during retirement will receive a substantial annuity.

The trial court made findings and entered a decree. In the former the court found that Mrs. Maskel did not establish grounds for setting aside the original decree but nonetheless found that a different property division should be made. In the decree itself, the court did not dismiss or deny the petition to vacate. Rather, it set aside the portion of the original decree which awarded Mr. Maskel the apartment house. The court granted that property to Mrs. Maskel and required her to pay the balance of the mortgage on it. The court also granted her a certain rock table top. In all other respects the court confirmed the original decree.

Mrs. Maskel appealed, asking that we reverse the trial court's failure to vacate the whole original decree, that we order a new trial of the entire dissolution proceeding, and that we grant her attorney fees for this appeal. Mr. Maskel cross-appealed, asking that we affirm the trial court's finding that Mrs. Maskel did not establish grounds to set aside the original decree and that we set aside the trial court's decree altering the property division.

The appeal has two aspects. First, did the trial court err when it partially set aside the original decree? Second, if not, was the trial court's determination of the parties' financial matters equitable?

I. The case is in a strange posture. Before the trial court was a petition to set aside the original decree. If Mrs. Maskel did not establish her grounds, the original decree should stand. If she did establish her grounds, she should have relief. But the trial court found that Mrs. Maskel did not establish her grounds and yet granted her relief. Upon examination of the case, we conclude that the court properly granted relief, for we believe that Mrs. Maskel established her grounds.

Before turning to Mrs. Maskel's grounds to set aside, we consider a preliminary legal question. Rule 253(a) of the Rules of Civil Procedure requires that a petitioner such as Mrs. Maskel must in her petition aver a meritorious defense unless her original answer does so. Mrs. Maskel complied with this requirement. Rule 253(d) then allows but does not require a trial court to try and determine the grounds alleged in the petition to vacate before trying the validity of the defense averred. Here the trial court tried both issues, the grounds and the defense, as it had a right to do.

As to the defense averred, the court found that Mrs. Maskel had a good defense as to the property division but not as to the dissolution itself. The court therefore vacated the original decree as to the property division and let the dissolution stand.

■ Our examination of the testimony persuades us that substantial evidence supports the court's finding that Mrs. Maskel had a good defense as to the property division but not as to the dissolution. The preliminary legal question, therefore, is whether the court could vacate the original decree *in part*—set aside the property division and let the dissolution stand. The general rule is that partial relief may be granted where justice requires. Parag v. Wal-

ters, 11 Ariz.App. 276, 464 P.2d 347; Persky v. Puglisi, 101 Conn. 658, 127 A. 351; Road Material & Equipment Co. v. McGowan, 229 Miss. 611, 91 So.2d 554; Missouri-Kansas-Texas R.R. v. Pluto, 138 Tex. 1, 156 S.W.2d 265 (Tex.Com.App.); 46 Am.Jur.2d Judgments § 783 at 944 ("A court having power to vacate a judgment entirely may grant less relief by vacating it in part only, where justice so requires."); 49 C.J.S. Judgments § 302, at 555 (same).

A case very similar in principle to the present one is Parag v. Walters, supra. There the defendant sought to vacate a default judgment and proved inter alia that he had a defense to part of the plaintiff's claim. The trial court vacated the judgment as to that part only, and the appellate court affirmed.

■ We hold, therefore, that the trial court had authority to set aside the original decree in part. We thus proceed to Mrs. Maskel's grounds to vacate the original decree, to determine whether the trial court properly granted her relief at all. The problem here relates essentially to trial-court discretion.

■ We do not review cases of this kind de novo. The trial court's fact findings stand if supported by substantial evidence. Cook v. Cook, 259 Iowa 825, 146 N.W.2d 273. But no real disagreement exists here about the *facts*. We have stated the facts substantially as the trial court found them. The disagreement of the parties arises over whether the trial court should have exercised its discretion to find that these facts constitute *grounds* to vacate. Trial courts have discretion in determining whether grounds exist, but the discretion is not unlimited. Kirby v. Holman, 238 Iowa 355, 25 N.W.2d 664.

We think on the established facts here the trial court should have held that grounds to vacate exist. See Dragstra v. Northwestern State Bank, 192 N.W.2d 786 (Iowa). The decree was contrary to the import of Mr. Maskel's letter of January 2, 1972, and to his testimony on the stand that

Mrs. Maskel had an interest in the real estate. The separation agreement, attached to the dissolution petition which was before Judge Sutton, did not really deprive Mrs. Maskel of an interest in the real estate: first, the agreement was entered into to get around housing regulations, and second, the real state was not acquired separately by the spouses but together.

■ Moreover, Mr. Murphy did not know that trial was to be held on March 29, 1972. Had he known that it was, he could have presented the other side of the case to Judge Sutton. Nor did the clerk send Mr. Murphy a copy of the original decree as required by rule 120 of the Rules of Civil Procedure. Mr. Murphy had appeared in the cause and was entitled to a copy. Had he received a copy of the decree at the time, he could have promptly moved to set aside the default under rule 236. On all the established facts, we hold the trial court should have concluded that grounds existed under rule 252 to set aside the decree. Thus although the court did not find such grounds, it reached the right result when it set aside the original decree as to the property division.

II. Does the trial court's property division constitute an equitable determination of the parties' financial matters? Mrs. Maskel requests that she be granted a larger share of the real property and a number of items of furniture, alimony, and attorney fees for this appeal. Mr. Maskel resists her request.

■ The governing principles are stated in Schantz v. Schantz, 163 N.W.2d 398 (Iowa), and In re Marriage of Williams, 199 N.W.2d 339 (Iowa). We have weighed the evidence here in the light of those principles. As to the division of real property and furniture, the trial court accomplished equity. The three real estate properties in Clinton and Lyons actually belonged to the parties together. The court awarded Mrs. Maskel the apartment house. Perhaps that property has a little larger equity than the

commercial building, but the court offset this by granting Mr. Maskel the three lots, in addition to the commercial building. The court granted Mr. Maskel more of the furniture than Mrs. Maskel, but the court allowed Mrs. Maskel to keep her jewelry and awarded her a table top to which she has a sentimental attachment. The court also permitted Mrs. Maskel to keep her Florida lot, acquired before the marriage.

As to the alimony, the marriage was short-lived, each party has an occupation and earnings, and each will receive retirement benefits. Alimony does not appear to be in order. See In re Marriage of Winter, 223 N.W.2d 165 (Iowa).

We think the trial court's decree is fair to both parties.

Mrs. Maskel's request for attorney fees is well taken in part. The appeal and cross-appeal have two aspects: that relating to setting aside the original decree, and that relating to determining the parties' financial matters. Mrs. Maskel is not entitled to attorney fees as to the former. Cf. Lane v. Oxberger, 224 N.W.2d 1245 (Iowa) (no attorney fees for support-related certiorari proceedings). But she is entitled to them as to the latter. The latter proceedings do not constitute a review of a modification decree. They amount to a review of a dissolution decree as to financial matters. Hence the ordinary rule applies relating to attorney fees in appeals of dissolution proceedings.

After considering the relative financial positions and earnings of the parties and the services on appeal rendered by Mrs. Maskel's attorneys in the part of the appeal relating to the parties' financial matters, we grant Mrs. Maskel $600 of Mr. Maskel to apply on her attorney fees on appeal.

Modified and affirmed.